IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | |
|---|---|
| STEVEN VAN HORNE, § | |
| § | |
| Plaintiff, § | |
| § | Civil Action No. 1:21-CV-00173-BU |
| v. § | |
| § | |
| VALENCIA, *et al.*, § | |
| § | |
| Defendants. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF**
**THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff STEVEN VAN HORNE, proceeding pro se, filed a complaint in Texas state court, alleging violations of his constitutional rights by Defendants Tommy Valencia, Daniel White, Charles Wheeler, and the Texas Department of Public Safety ("DPS"). *See* Dkt. No. 1. White, Valencia, and Wheeler removed the case to this Court on federal question grounds on September 20, 2021.[1] Dkt. No. 1. By a standing order of reference, United States District Judge James Wesley Hendrix referred this pro se civil action to the undersigned for pretrial management under 28 U.S.C. § 636(b). *See* Dkt. No. 3.

Now before the Court is Defendants' White, Valencia, and Wheeler's Motion to Dismiss for Failure to State a Claim upon which relief can be granted. Dkt. No. 4. Having considered the Motion and Van Horne's claims, the undersigned recommends that

---

[1] The DPS, although a named defendant in Van Horne's original state complaint, has not been served, did not appear in state court, and did not join in the removal action. *See* Dkt. No. 1 at 1. The undersigned addresses Van Horne's claims against DPS below, outside of considering the instant Motion.

1

Defendants' Motion be GRANTED and that the claims against DPS be dismissed *sua sponte*.

## I.     FACTUAL BACKGROUND

A. <u>The Facts as Alleged by Van Horne.</u>

Van Horne's complaint concerns a traffic stop in Taylor County on March 16, 2021. *See* Dkt. No. 1-4 at 2.

Van Horne was pulled over by Defendant State Trooper Daniel White for having a defective light on the back of his pick-up truck. *See id.* at 4. When White first approached Van Horne's truck, Van Horne initially refused to roll down his window more than a few inches, but then exited the vehicle at White's request to observe and acknowledge the defective light. *Id*. White next asked Van Horne to stand to the side of the road and produce a driver's license. *Id*. But Van Horne "returned to the truck, locked the doors, and began looking for documents with his name on it." *Id.* at 5. Van Horne continued to rummage through his truck compartments and refused to exit the vehicle when ordered to do so by White, even after White drew his service weapon. *Id*. at 5.

Throughout the encounter, Van Horne argued that he did not have or need a driver's license or state-approved identification, but would provide an alternative identification document. *Id*. at 4-5. That identification document, as alleged by Van Horne, is a "Declaration of Plaintiff's religion's sovereignty," issued and signed by members of a religious organization and declaring Van Horne to be a "True Location Trust of a True Person Trust." Dkt. No. 9-1 at 5. The document states that Van Horne possesses

"immutable and irrevocable Rights [sic] to possess and occupy the land," given by the "Power and Authority vested in Us by the Supreme Creator of Heaven and Earth against all other lessor claims of right." *Id*.

While Van Horne repeatedly ignored White's orders to exit his vehicle, White advised Van Horne that he would be placed under arrest. As Van Horne continued to refuse to cooperate, White returned to his patrol vehicle. Dkt. No. 1-4 at 5. Defendant State Trooper Tommy Valencia then arrived. *Id*. After arguing with White and Valencia about the need for a license and demanding their names, badge numbers, and that a supervisor be called to the scene, Van Horne eventually exited his vehicle, and Valencia placed him in handcuffs. *Id*. Defendant State Trooper Sergeant Charles Wheeler then arrived. *Id*.

Van Horne was arrested for failing to identify and for driving without a valid driver's license, and placed in the back of White's squad car. *See id*. at 5-6. Defendants searched Van Horne's vehicle and found Van Horne's "Declaration of Plaintiff's religion's sovereignty" document. *Id*. at 6. White took Van Horne to the Taylor County Jail, where he was booked and photographed for a "mug shot." *Id*. at 6, 20. Van Horne's truck was impounded, his photograph posted online, and bail set at $566.00. *Id*. at 6. Van Horne states he was charged $807.65 for bail, impounding, and "making arrangements to get to where the truck was impounded." *Id*.

B. <u>Van Horne's Legal Claims</u>

Van Horne now brings claims "respectfully reject[ing] the notion that he must secure a state issued driver's license to travel over the highways and byways of this nation

3

or that there is some offense committed if the Plaintiff does not present a state issued ID when asked for identification." *Id*. at 17. Van Horne claims that Defendants White, Valencia, Wheeler, and DPS violated his constitutional protections against religious restrictions, unreasonable searches and seizures, kidnapping, ransom, theft, "duress of Plaintiff's Person," "forced slavery," and his own "peace and dignity." *Id*. at 2, 17-21.

Van Horne claims that he is not a "child of Texas" due to his religious beliefs which require him to be "separate," interpreted by him to mean separate from governing laws. *Id*. at 8. Van Horne states that he is subject only to the natural laws of the sovereign laws of "the Creator." *Id*. at 14. He states that he owes no duty to the State of Texas because he takes no "privileges" from the governments. *Id*. at 3. Van Horne further claims that because he has not "contracted" with Texas or DPS, he cannot be governed by them. *Id*. at 6.

Van Horne claims that as part of his protected religious freedoms under the Constitution, he does not have a "duty of securing a license," and therefore the Defendants' arrest of him was an unlawful imposition on his "liberty," which in his situation, is a religious belief that requires he be separate from the government. *Id*. at 8, 12. To support these statements, Van Horne cites excerpts from the U.S. Constitution, the Texas Constitution, the Declaration of Independence, the Bible, and various dictionaries, statutes, and caselaw. *See id*.

Van Horne asks the Court to curtail the allegedly unconstitutional practice of enforcing driver license and identification requirements, stopping the government's long encroachment on the right of free travel. *Id*. at 22. In addition to asking the Court to alter

4

the licensing and identification laws of Texas, Van Horne seeks $12.5 million, dismissal of all criminal charges, deletion of all records of any information about him, an injunction to train DPS officers and to order Texas issue him a religious pass to prevent further imposition of Texas laws, an apology, and reimbursement for the "ransom" monies. *Id*. at 25-26.

## II. LEGAL STANDARDS

A. Basis for Federal Jurisdiction

"Federal courts are courts of limited jurisdiction" and "possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Because of this circumscribed power, "[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.*

The two statutory bases for federal subject matter jurisdiction are federal-question jurisdiction under 28 U.S.C. § 1331 and diversity jurisdiction under 28 U.S.C. § 1332. Section 1331 provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

Federal courts may exercise jurisdiction over a civil action if the plaintiff's well-pleaded complaint shows a substantial question of federal law. *Singh v. Duane Morris LLP*, 538 F.3d 334, 338 (5th Cir. 2008). A federal question exists if federal law creates the cause of action or if plaintiff's alleged "right to relief necessarily depends on resolution of a

substantial question of federal law." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 27–28 (1983).

B. <u>Motion to Dismiss for Failure to State a Claim Under Rule 12(b)(6)</u>

Defendants bring their Motion to Dismiss under Rule 12(b)(6), which authorizes the dismissal of a plaintiff's claim for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). To avoid dismissal, pleadings must demonstrate specific, well-pleaded facts, not merely conclusory allegations. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). The Court must accept those well-pleaded allegations as true and view them in the light most favorable to the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).

To defeat a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The facts alleged by plaintiffs must "raise a right to relief above the speculative level." *Id*. at 555. While a plaintiff need not detail specific factual allegations, a complaint must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*.; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting that "the tenet that a court must accept as true all of the allegations in the compliant is inapplicable to legal conclusions").

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). The Supreme Court remarked in *Iqbal*

that "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citations omitted). In sum, when plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 678.

In addition to testing the factual sufficiency of a claim, Rule 12(b)(6) authorizes a court to dismiss claims that have no basis, arguable or otherwise, in the law. *Neitzke v. Williams*, 490 U.S. 319, 327 (1989); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992). And a complaint that lacks an arguable basis in law or fact is deemed "frivolous." *Neitzke*, 490 U.S. at 325; *Brewster v. Dretke*, 587 F.3d 764, 767 (5th Cir. 2009). A complaint lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Neitzke*, 490 U.S. at 326–27; *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999). And a claim lacks an arguable basis in fact "if the facts alleged are clearly baseless, a category encompassing allegations that are fanciful, fantastic, and delusional." *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992).

In ruling on a Rule 12(b)(6) motion, the court assesses whether the plaintiff has pleaded a legally cognizable claim, not the likelihood of success. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). "Whether Plaintiffs have the ultimate burden of proof at trial on any of their claims is irrelevant here because, for

purposes of Defendants' Rule 12(b)(6) motion, Plaintiffs have no burden of proof. Rather, the issue is whether Plaintiffs, based on their pleadings, have stated a claim upon which relief can be granted." *Preston v. Seterus, Inc.*, 931 F. Supp. 2d 743, 751 (N.D. Tex. 2013).

"In determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry is limited to (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Gomez v. Galman, et al.*, No. 20-30508, 2021 WL 5371112, at *2 (5th Cir. Nov. 18, 2021) (quoting *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019).

### III. DISCUSSION AND ANALYSIS

A. <u>Claims against White, Valencia, and Wheeler</u>

Through their Motion, Defendants argue that Van Horne's claims lack a basis in law or fact. Defendants characterize Van Horne's claims as "founded on his basic assertion that he may freely drive a motor vehicle on Texas roads without being required to possess a valid driver license." Dkt. No. 4 at 2. Defendants frame Van Horne's claims as asserting that enforcement of driver's license and identification requirements, and subsequent arrest for failure to follow those laws, "violates a variety of his Constitutional rights, to include his First Amendment right to free exercise of religion, his Fourth Amendment right against unlawful search and seizure, his Thirteenth Amendment right against enslavement, and his Fourteenth Amendment right against deprivation of liberty without due process." *Id*.

8

Defendants allege these assertions have no basis in law, stating that the State may rightfully exercise its constitutional police powers by making and enforcing laws necessary for public safety on its highways. *Id*. at 3. This established power allows Texas to require drivers of motor vehicles to be licensed and produce identification on demand. *Id*. When Van Horne chose not to follow those laws, and then admitted his actions, Defendants lawfully arrested him. *Id*.

In his response, Van Horne restates his core claim that he is not subject to the laws of Texas, and that Defendants' actions "deprived Plaintiff of [right to liberty, happiness, religious freedom and privacy], used unlawful threats and force . . . infringed upon Plaintiff's privacy, stole Plaintiff's vehicle, subjected Plaintiff to slavery, and kidnapped Plaintiff under the color of legal arrest." Dkt. No. 1-4 at 3. Van Horne further argues that the laws of Texas are invalid when applied to him, his vehicle, his activities, or his travel. Finally, Van Horne argues that he was not driving when the traffic stop occurred and that a "motor vehicle" definition does not apply to his pick-up truck. *See* Dkt. No. 9.[2]

Van Horne continues to assert that he possesses a constitutional and God-given right to travel on the roads of the State of Texas without having to comply with the laws of the State of Texas. *Id*. at 3.

---

[2] Van Horne claims he was not driving at the time of the incident; in his original petition and amended complaint, however, he describes driving and being pulled over. Dkt. No. 1 at 14; Dkt. No. 8 at 3. He states that he was "traveling east on FM 18," and after he passed a parked police vehicle, "pulled over to the shoulder," and later exited his vehicle to observe a defective light in the cab of his pick-up. *Id*. Van Horne then appears to base his arguments on the assertion that he was traveling, not driving. Such a distinction is frivolous and without merit.

"These arguments derive from the so-called sovereign citizen movement and are legally frivolous." *Westfall v. Davis*, Civ. No. 7:18-cv-00023-O-BP, 2018 WL 2422058, at *2 (N.D. Tex. May 4, 2018) (internal quotes omitted). Claimed "sovereign citizens" argue that, although they reside in the United States, they are sovereign unto themselves, and thus are not citizens of the United States nor the state in which they reside. *Id*. These arguments are cobbled together from Constitutional law, the Uniform Commercial Code, and Bible verses, and are used to avoid legal liability and criminal prosecution. *See id.*; *see also Perkins v. Ivey*, 772 F. App'x 245 (5th Cir. 2019) (denying "sovereign citizen" claims of no duty to have a driver's license or vehicle registration); *see also Mason v. Anderson*, Civil Action H-15-2952, 2016 WL 4398680 (S.D. Tex. Aug. 18, 2016) (denying a "sovereign citizen's" Section 1983 claims against law enforcement). "These teachings have never worked in a court of law—not a single time." *Wirsche v. Bank of Am., N.A.*, No. 7:13-CV-528, 2013 WL 6564657, at *2 (S.D. Tex. Dec. 13, 2013).

Van Horne's arguments are replete with the hallmarks of the sovereign citizen movement. He alleges that due to his religious beliefs, he is subject only to a sovereign deity, and that without his affirmative acceptance of Texas's authority, he is not subject to the laws of the State. He states that he is not a citizen of Texas, objects to the use of all-capitals to spell his name in the case style, and quotes the Bible throughout his filings.[3] His

---

[3] Many "sovereign citizens" argue that legal documents reflecting a name in all-capitals identifies a different individual than a document reflecting the same name in initial-only capitals. This argument asserts that unidentical typeface names fail to properly identify the litigants, wrongly asserting this allows them to escape legal liability, which is a legally frivolous argument. *See Gravatt v. U.S.*, 100 Fed. Cl. 279 (Fed. Cl. Sept. 27, 2011) (collecting cases arguing about name typeface).

assertion of religious tenets in sovereign citizen ideology does not provide any legitimate legal foundation.

Like other courts addressing claims from "sovereign citizens," the undersigned need not address the elements of each claim because the foundation is "based solely on the argument rejected by the courts." *Perkins v. Brewster*, No. 1:17-CV-1173-LY, 2018 WL 4323948, at *2 (W.D. Tex. Sept. 7, 2018). Rather, the undersigned provides a brief analysis of Van Horne's core claims.

First, Van Horne's claims that a motor vehicle operator is not required to have a driver license without the driver's consent to be bound by the laws of Texas is an "oft-rejected argument" that is "blatantly incorrect." *Id.* The Supreme Court established "long ago that states may regulate the operation of all motor vehicles that drive within their borders," including the licensing and registration of drivers "pursuant to their constitutionally protected police power." *Ivey*, 772 F. App'x at 246 (citing *Hendrick v. Maryland*, 235 U.S. 610, 622 (1915)). Texas law states that "drivers may not operate a motor vehicle on a highway in this state unless the person holds a driver's license" and must produce the license if requested by a police officer. *Id.* (quoting TEX. TRANSP. CODE ANN. §§ 521.021, 521.025 (West, current through the end of the 2021 Reg. and Called Sess. of the 87th Legis.)).[4]

---

[4] While certain persons are exempt from the Texas license requirement, Van Horne neither fits within one of the exemptions nor claims to do so. *See* TEX. TRANSP. CODE. ANN. § 521.027 (exempting persons in the United States armed service operating a military vehicle, persons operating certain agricultural equipment, non-residents on active duty in the armed forces holding a license from another state or Canada, and the spouse or dependent child of a non-resident on active duty in the armed forces who holds a license from another state or Canada).

Likewise, Van Horne asserts that an individual whose religious belief "withdraw[s] their consent to be governed outside of the sovereign covenant of their Creator" is not required to present identification when asked by a police officer during a traffic stop. Dkt. No. 1-4 at 14. In his response, Van Horne attached as an exhibit what appears to be the "citizenship" identification which he claims satisfied White's request for identification. *See* Dkt. No. 9-1. The document bears Van Horne's typed name only, showing no picture or other identifying information, is not issued by any governmental authority, and is signed by a "2nd Apostolic Prothonotary". *See id*. at 5.

This claim is equally frivolous. During a traffic stop, a police officer has the right to ask the driver for identification. *See U.S. v. Brigham*, 382 F. 3d 500 (5th Cir. 2004) (upholding as reasonable a traffic stop in which the police officer requested the vehicle operator's driver license and identification); *see also Kothe v. State*, 152 S.W.2d 54 (Tex. Crim. Ct. App. 2004) (finding an officer has the authority to review license and identification until confirmation of its validity). Further, an officer may lawfully arrest an individual for even minor offenses. *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001).

The undersigned need not address Van Horne's further claims, concluding that Van Horne has failed to plead facts supporting a plausible claim for which relief may be granted, and his claims could be dismissed on this basis alone. *See Brewster*, 2018 WL 4323948 at *2; *see also Gravatt v. U.S.*, 100 Fed. Cl. 279 (Fed. Cl. Sept. 27, 2011).

Alternatively, the Fifth Circuit has repeatedly observed the well-settled principle that "[w]hen a plaintiff's complaint is facially frivolous and insubstantial, it is insufficient to invoke the jurisdiction of a federal court." *Dilworth v. Dallas Cnty. Cmty. Coll. Dist.*, 81 F.3d 616, 617 (5th Cir. 1996) (citing *Olivares v. Martin,* 555 F.2d 1192, 1195 (5th Cir.1977); *Raymon v. Alvord Indep. Sch. Dist.,* 639 F.2d 257, 257 (5th Cir.1981)). Here, Van Horne's claims are patently frivolous and insubstantial.

For the above reasons the undersigned RECOMMENDS that the Court dismiss Van Horne's claims against White, Valencia, and Wheeler *sua sponte* under Rule 12(b)(1) for lack of subject matter jurisdiction or, in the alternative, GRANT White, Valencia, and Wheeler's Rule 12(b)(6) motion for failure to state a claim upon which relief may be granted.

B. Claims against DPS

As stated above, the DPS, although named by Van Horne as a defendant in his original state complaint, has not been properly served in this action and has not entered an appearance in either the state court case or the federal case. *See* Dkt. No. 1 at 1.

A federal district court may "consider the sufficiency of the complaint on its own initiative." *Lozano v. Ocwen Federal Bank, FSB*, 489 F.3d 636, 642-42 (5th Cir. 2007) (internal citations omitted). The district court may dismiss an action *sua sponte* under Rule 12(b)(6) "as long as the procedure employed is fair." *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998) (quoting 5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357, 301 (2d ed. 1990) (footnote omitted).

13

Fairness in this context typically requires both notice of the court's intention and an opportunity to respond or amend. *Davoodi v. Austin Indep. Sch. Dist.*, 755 F.3d 307, 310 (5th Cir. 2014) (citing *Lozano*, 489 F.3d at 643).

The Fifth Circuit has recently reiterated the importance of providing plaintiffs with "a meaningful opportunity" to either respond to pleading deficiencies or further develop factual allegations before a court *sua sponte* dismisses the plaintiff's case. *Atkins v. Propst*, No. 20-11008, 2022 WL 24504, at *1 (5th Cir. 2022). But notice and an opportunity to amend is not required where the plaintiff has alleged his best case. *Jacquez v. Procunier,* 801 F.2d 789, 792–93 (5th Cir.1986). And here, unlike pro se claims that may suffer only from a need for more factual development, Van Horne's claims are patently frivolous and completely devoid of an arguable basis, either in fact or in law, for the wrongs alleged. *See Neitzke*, 490 U.S. at 325. Even if the Court were to assume that Van Horne's alleged facts are true, and construed those facts in a light most favorable to him, his claims still suffer from a fatal absence of even an arguable basis in law. In short, Van Horne's claims rest entirely upon indisputably meritless legal theories. *See id.* at 327; *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005).

Further, Van Horne has fourteen days to respond to the undersigned's recommendation, providing both notice of the Court's intention and an opportunity to cure the deficiencies noted above. *Alexander v. Trump*, 753 F. App'x 201, 208 (5th Cir. 2018) (finding that the objection period following a magistrate judge's recommendation for *sua*

*sponte* dismissal of claims against an unserved state official provided the plaintiff with adequate notice and opportunity).

Finally, as with Van Horne's claims against White, Valencia, and Wheeler, his claim against the DPS "is facially frivolous and insubstantial [and] insufficient to invoke the jurisdiction of a federal court." *Dilworth,* 81 F.3d at 617.

For the above reasons, the undersigned further RECOMMENDS that the Court dismiss *sua sponte* Van Horne's claims against the DPS under Rule 12(b)(1) for lack of subject matter jurisdiction or, in the alternative, under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

## IV. CONCLUSION

For the reasons explained above, the undersigned RECOMMENDS that the Court dismiss Van Horne's claims against White, Valencia, and Wheeler *sua sponte* under Rule 12(b)(1) for lack of subject matter jurisdiction or, in the alternative, GRANT White, Valencia, and Wheeler's Rule 12(b)(6) motion for failure to state a claim upon which relief may be granted. The undersigned further RECOMMENDS that the Court dismiss *sua sponte* Van Horne's claims against the DPS under Rule 12(b)(1) for lack of subject matter jurisdiction or, in the alternative, under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

## V. RIGHT TO OBJECT

A copy of these Findings, Conclusions, and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report

and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2017); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

ORDERED this 16th day of February, 2022.

_____
JOHN R. PARKER
UNITED STATES MAGISTRATE JUDGE