IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

STEVEN VAN HORNE,                    §
                                     §
            Plaintiff,               §
                                     §    Civil Action No. 1:21-CV-00173-H-BU
v.                                   §
                                     §
VALENCIA, *et al.*,                  §
                                     §
            Defendants.              §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF
THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff STEVEN VAN HORNE, proceeding pro se, filed a Complaint in Texas

state court alleging violations of his constitutional rights by Texas State Troopers Tommy

Valencia, Daniel White, and Charles Wheeler, and the Texas Department of Public Safety

(DPS). *See* Dkt. No. 1. White, Valencia, and Wheeler removed the case to this Court on

federal question grounds on September 20, 2021.[1] *Id.* Under Special Order No. 3-251 of

this Court, this case was automatically referred to the undersigned for the determination of

non-dispositive matters and the issuance of findings, conclusions, and recommendation on

all dispositive matters. *See* Dkt. No. 3. Additionally, United States District Judge James

Wesley Hendrix directed the undersigned to submit a report and recommendation on the

---

[1] The DPS, although a named defendant in Van Horne's original state Complaint, has not been served, did not appear in state court, and did not join in the removal action. *See* Dkt. No. 1 at 1. The undersigned addresses Van Horne's claims against DPS below, outside of considering the instant Motion.

outstanding motions. *See* Dkt. No. 17 at 6. Thus, the undersigned submits these proposed

Findings, Conclusions, and Recommendations for the disposition of the pending motions.

## I.  BACKGROUND

The factual and procedural backgrounds for Van Horne's claims are detailed

elsewhere (*see* Dkt. Nos. 11, 17). A summary is provided here for relevant context.

Van Horne's Complaint concerns a traffic stop in Taylor County on March 16, 2021.

*See* Dkt. No. 1-4 at 2. Van Horne was pulled over by Trooper Daniel White for having a

defective light on the back of his pick-up truck. *See id.* at 4. Van Horne was uncooperative

with White during the traffic stop, but eventually exited his vehicle after Trooper Tommy

Valencia arrived.[2] After exiting his vehicle, Van Horne was placed under arrest for failing

to identify himself and for driving without a valid driver's license. *See* Dkt. No. 11 at 3.

Van Horne brought this lawsuit against the three Troopers involved in the traffic

stop and his arrest—White, Valencia, and Trooper Sergeant Charles Wheeler who arrived

after Van Horne was handcuffed. *Id*.

Through his claims, Van Horne rejects "the notion that he must secure a state issued

driver's license to travel over the highways and byways of this nation or that there is some

offense committed if the Plaintiff does not present a state issued ID when asked for

identification." Dkt.  No. 1-4 at 17. Van Horne further claims that his religious beliefs

require him to be "separate," interpreted by him to mean separate from governing laws—

---

[2] For example, Van Horne initially refused to roll down his window more than a few inches, locked himself inside the vehicle after briefly exiting and refused to exit, and refused to produce a driver's license. *See* Dkt. No. 11 at 2–3.

including the laws of the State of Texas—and thus has no "duty of securing a license." *Id*. at 9. Van Horne states that he is subject only to the natural and sovereign laws of "the Creator." *Id*. at 15.

Van Horne claims that White, Valencia, Wheeler, and the DPS violated his rights to be free from religious restrictions, unreasonable searches and seizures, kidnapping, ransom, theft, "duress of Plaintiff's Person," "forced slavery," and any other interference with his "peace and dignity." *Id*. at 3, 17–21.

Van Horne asks the Court to declare the State's driver license and identification laws an unconstitutional encroachment on the right of free travel. *Id*. at 22. Additionally, Van Horne seeks $12.5 million, dismissal of all criminal charges, deletion of all State records related to him, the issuance by the State of a religious pass to prevent further imposition of Texas laws, an apology from the DPS and its officers, reimbursement for bail and vehicle impound charges—which Van Horne characterizes as "ransom"—, and miscellaneous other damages. *Id*. at 25–26.

After removing this case to federal court, White, Valencia, and Wheeler filed a Motion to Dismiss for Failure to State a Claim under Rule 12(b)(6). Dkt. No. 4. And Van Horne filed a response to their Motion. Dkt. No. 9. For the reasons explained in the February 16, 2022 Findings, Conclusions, and Recommendation (February 16 FCR), the undersigned recommended that the Court dismiss *sua sponte* Van Horne's claims against White, Valencia, and Wheeler under Rule 12(b)(1) for lack of subject matter jurisdiction or, in the alternative, grant White, Valencia, and Wheeler's Rule 12(b)(6) Motion for

failure to state a claim. Dkt. No. 11. The undersigned further recommended that the Court dismiss *sua sponte* Van Horne's claims against the DPS under Rule 12(b)(1) for lack of subject matter jurisdiction or, in the alternative, under Rule 12(b)(6) for failure to state a claim. *Id.* Van Horne filed objections to the February 16 FCR. Dkt. No. 12.

By Order dated July 18, 2022, District Judge Hendrix overruled Van Horne's objections to the FCR and dismissed Van Horne's claims against White, Valencia, Wheeler, and the DPS. Dkt. No. 17. In that same Order, District Judge Hendrix noted that the case remains referred to the undersigned for a report and recommendation on the outstanding motions at Dkt. Nos. 13, 14, and 16. *Id*. at 6. Since the entry of District Judge Hendrix's July 18 Order, Van Horne has filed a fourth motion, Dkt. No. 18, which is a Motion to Amend Order and Judgment.

Having now considered the four pending motions, the undersigned recommends that each be denied for the reasons explained below.

## II.  DISCUSSION AND ANALYSIS

### A.  Second Motion for Leave to Amend Complaint (Dkt. No. 13)

Van Horne's Second Motion for Leave to Amend Complaint (Dkt. No. 13) is similar to his First Motion for Leave to Amend (Dkt. No. 6), which was denied by Order dated February 16, 2022. *See* Dkt. No. 10. Through Van Horne's First Motion for Leave to Amend, he sought to add DPS Director Steven McCraw as a party under Rule 15 solely because Van Horne believed McCraw was required to be a party for Van Horne to effectively serve the DPS. Dkt. No. 6 at 1–2. Through his Second Motion for Leave to

Amend, Van Horne again seeks only to add McCraw as a defendant, but now states that in addition to the amendment being required to serve the DPS, Van Horne wishes to "[r]emove those claims which pertain to state court's jurisdiction" and to "[s]tate the elements of his claim which pertain to federal court's jurisdiction." Dkt. No. 13 at 2. Otherwise, the two motions are substantively the same.

Rule 15 governs the amendment and supplementation of pleadings and provides that a party "may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." FED. R. CIV. P. 15(a)(1). Otherwise, "a party may amend its pleading only with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a)(2). Here, because the time periods specified in Rule 15(a)(1) have passed, Van Horne appropriately seeks leave of Court under Rule 15(a)(2) for his amendment.

As Van Horne and Rule 15(a)(2) point out, "[t]he court should freely give leave when justice so requires." *Id.*; Dkt. No. 13 at 2. But [i]t is settled that the grant of leave to amend the pleadings pursuant to Rule 15(a) is within the discretion of the trial court." *Garcia v. Zale Corp.*, No. 3:04-CV-1917-D, 2006 WL 298156, at *1 (N.D. Tex. Feb. 1, 2006) (quoting *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971)). And leave to amend "is by no means automatic. *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993) (quoting *Addington v. Farmer's Elevator Mut. Ins. Co.*, 650 F.2d 663, 666 (5th Cir. 1981)).

When considering whether to grant leave under Rule 15(a)(2), courts assess "undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the other party by virtue of the allowance of the amendment, [and] futility of the amendment." *Whitmire v. Victus Ltd.*, 212 F.3d 885, 889 (5th Cir. 2000) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)) (internal quotations omitted). "The liberal amendment rules of [Rule 15(a)] do not require that courts indulge in futile gestures [and] [w]here a complaint, as amended, would be subject to dismissal, leave to amend need not be granted." *DeLoach v. Woodley*, 405 F.2d 496 (5th Cir. 1968) (citing *Foman*, 371 U.S. at 182); *see also Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) ("Denying a motion to amend is not an abuse of discretion if allowing an amendment would be futile.").

"An amendment is futile if it would fail to survive a Rule 12(b)(6) motion." *Id.* (citing *Briggs v. Miss.*, 331 F.3d 499, 508 (5th Cir. 2003)). Therefore, the Court reviews the proposed amendment under "the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 873 (5th Cir. 2000) (internal citations and quotation marks omitted).

To defeat a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The facts alleged by plaintiffs must "raise a right to relief above the speculative level." *Id.* at 555. While a plaintiff need not detail specific factual allegations, a complaint must set forth "more than labels and conclusions, and a formulaic recitation of

6

the elements of a cause of action will not do." *Id.*; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting that "the tenet that a court must accept as true all of the allegations in the compliant is inapplicable to legal conclusions").

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). The Supreme Court remarked in *Iqbal* that "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citations omitted). In sum, when plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 678.

In addition to testing the factual sufficiency of a claim, Rule 12(b)(6) authorizes a court to dismiss claims that have no basis, arguable or otherwise, in the pleaded facts or the applicable law. *Neitzke v. Williams*, 490 U.S. 319, 325–27 (1989); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992). Such a claim is deemed "frivolous." *Neitzke*, 490 U.S. at 325; *Brewster v. Dretke*, 587 F.3d 764, 767 (5th Cir. 2009). A claim lacks an arguable basis in fact "if the facts alleged are clearly baseless, a category encompassing allegations that are fanciful, fantastic, and delusional." *Denton v. Hernandez*, 504 U.S. 25, 32–33 (1992). And a complaint lacks an arguable basis in law when it is "based on an indisputably

meritless legal theory." *Neitzke*, 490 U.S. at 326–27; *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999).

When considered on its face, Van Horne's Second Motion for Leave, if granted, would serve no purpose other than adding McGraw as a defendant. Thus, whether the Court exercises its discretion to allow Van Horne to amend his pleading turns on the survivability of Van Horne's claim(s) against McGraw under Rule 12(b)(6).

Van Horne seeks to add McCraw as a party solely because "[i]n the original complaint a name was not included by which The [sic] Department of Public Safety of State of Texas (DPS) could be served. Amendment would add Steven McCraw, Director and Colonel of the DPS." Dkt. No. 13 at 1. In denying Van Horne's First Motion for Leave to Amend, the undersigned observed that there does not appear to be a reason why Van Horne would need to add McGraw as a party merely to serve the DPS. *See* Dkt. No. 10 at 7. Despite this, as explained above, Van Horne persists in his belief that this amendment is necessary "to serve DPS by adding Steven McGraw in the C/O capacity." Dkt. No. 13 at 2.

Initially, the undersigned observes that Van Horne makes no attempt in his Second Motion for Leave—or in any other filing—to state a claim against McGraw, whether in McGraw's official capacity or in his personal capacity. He seeks to add McGraw solely as a means of effecting service on the DPS. This does not constitute a legal claim. How Van Horne serves the Defendants he originally named in this action is a distinct issue from whether this Court should exercise its discretion to permit Van Horne to amend his

Complaint under Rule 15(a)(1)(2) to add a new defendant *against whom he has not stated a plausible claim.* Again, as the Court explained in denying Van Horne's First Motion for Leave to Amend, the undersigned is not aware of any authority—and Van Horne has provided none—that permits adding a person as a party defendant solely because that person might also be a proper person to serve with process. Van Horne's Motion could be denied on this basis alone. But because Van Horne is acting pro se, the undersigned considers whether Van Horne's attempt to add McGraw may be reasonably construed to serve some other legitimate purpose.

Because Van Horne does not attempt to state a claim against McGraw, his allegations are of little help in determining whether any construed claim against McGraw would be in McGraw's official capacity or in his individual capacity. And while Van Horne generally seeks both monetary and equitable remedies from all Defendants, he is not clear from which Defendant he seeks which damages. But because Van Horne references McGraw's position as Director of the DPS and does not claim that McGraw was personally involved in violating his rights, the undersigned construes any potential claim Van Horne may have against McGraw as one in McGraw's official capacity, and for both types of damages. Each type of claim is discussed below.

   *1. Official capacity claim against McGraw for money damages*

No claim seeking money damages can be construed against McGraw in his official capacity. In *Will v. Mich. Dep't of State Police*, the Supreme Court held that a suable "person" under Section 1983 does not include a state, a state agency, or a state official sued

in his official capacity for money damages.[3] 491 U.S. 58, 71 (1989). The rationale underpinning this conclusion is that a Section 1983 claim against a person in that person's official capacity is, in effect, a suit against that person's office, and thus is no different than a suit against the state itself or the government entity that employs the person. *Id.* Here, to the extent Van Horne's allegations can be reasonably construed to state a claim against any Defendant, it would be one against McGraw's employing agency, the DPS, which Van Horne has already named as a defendant, and which has been dismissed. *See* Dkt. No. 17 at 6.

Thus, application of the rule announced in *Will* here would compel the conclusion that any potential money claim by Van Horne against McGraw in his official capacity would not survive scrutiny under Rule 12(b)(6) both because it fails to state a claim upon which relief may be granted—since neither official-capacity-McGraw nor the DPS are suable persons under Section 1983 for money claims—and because it is no different than the claims against the DPS that were previously dismissed. Thus, granting leave to add an official capacity money claim against McGraw would be futile.

Moreover, in addition to official-capacity-McGraw and the DPS not being "persons" under Section 1983 for money claims, the Eleventh Amendment bars suits for money damages against a state, state agency, or state official sued in an official capacity. *Edelman v. Jordan*, 415 U.S. 651, 663 (1974) (stating that "when the action is in essence

---

[3] In contrast, a state official sued in their official capacity for *prospective* relief is a "person" for purposes of Section 1983, and that potential claim is discussed below. *See, e.g.*, *Ex parte Young*, 209 U.S. 123, 159–60 (1908).

one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its [Eleventh Amendment] sovereign immunity from suit even though individual officials are nominal defendants"); *see also Virginia Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 253–56 (2011) (holding that the Eleventh Amendment bars suits for money damages against state officials who are sued in their official capacities).

For these reasons, any claim for money damages against McGraw in his official capacity would not survive a motion to dismiss under Rule 12(b)(1).[4]

### 2. *Official capacity claim against McGraw for prospective relief*

Any potential official capacity claim against McGraw for *prospective* relief fares no better. Under the *Ex parte Young* exception to Eleventh Amendment immunity, state officials who are sued in their official capacities for *prospective* relief to prevent future violations of a person's federal constitutional or statutory rights —and thus represent their respective state agencies—are proper defendants under Section 1983. *See Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002).

To determine whether a plaintiff has alleged a proper *Young* claim, federal courts "need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Id.* (internal citations omitted).

---

[4] While the undersigned notes that the standards under Rule 12(b)(1) are different than the standards under Rule 12(b)(6), allowing an amendment that would fail under either rule would be equally futile for purposes of exercising the Court's discretion under Rule 15(a)(2).

If Van Horne seeks to add McGraw as a party in his official capacity for purposes of seeking prospective relief—for example, in the form of an on-going exemption from state driver's license laws—then Van Horne fails to state a claim upon which relief can be granted under *Ex Parte Young* because his Complaint fails to plausibly allege an on-going violation of federal law, for reasons discussed in the undersigned's February 16 FCR and the Court's Order Accepting FCR. Dkt. Nos. 11, 17, respectively.

In dismissing Van Horne's claims against the DPS, this Court previously found that "[e]ven if the Court were to assume that Van Horne's alleged facts are true, and construed those facts in a light most favorable to him, his claims still suffer from a fatal absence of even an arguable basis in law" and "rest entirely upon indisputably meritless legal theories." [Dkt. No. 11 at 14, adopted by Dkt. No. 17]. Nevertheless, the Court provided Van Horne an opportunity to cure the deficiencies noted in the FCR. In response, Van Horne filed five objections, each of which was overruled by the Court. *See* Dkt. No. 17. Thus, the most straightforward inquiry into whether Van Horne's Complaint alleges ongoing violations of federal law must be answered in the negative.[5]

The result is the same if the Court looks beyond the face of Van Horne's Second Motion for Leave to Amend and reaches the Second Amended Complaint filed by Van Horne without leave. Van Horne filed the Motion on March 4, 2022. *Id.* Local Civil Rule

---

[5] The undersigned notes that in objecting to the February 16 FCR, Van Horne took issue with the undersigned's characterization of (1) his motivations for remaining within his vehicle during the traffic stop, (2) his verbal identification to the arresting officer, and (3) the undersigned's alleged incorrect identification of Van Horne's declaration of religious sovereignty. The undersigned has reviewed Van Horne's concerns with the framing of these incidents and concludes that the characterization of these incidents does little, if anything, to decrease the legal frivolousness of Van Horne's claims or increase their factual plausibility.

15.1(a) requires that a party filing a motion to amend a pleading "must attach a copy of the proposed amended pleading as an exhibit to the motion." L.R. 15.1(a). Van Horne did not attach a proposed amended pleading to his Motion. *See id*. And then on March 30, 2022, without having obtained the leave to amend sought by the Motion, Van Horne filed his Second Amended Complaint. Dkt. No. 15.

Although the Court is under no obligation to consider a pleading filed without the required leave of Court, the undersigned does so here because Van Horne is acting pro se. Van Horne's Second Amended Complaint makes no mention of McGraw or Van Horne's claims against him, other than indirectly through his claims against the DPS. *See id.* Thus, the Second Amended Complaint does not appear to reflect the amendment for which leave of Court was sought, *i.e*., the adding of McGraw.

Nor does the Second Amended Complaint attempt to cure any of the deficiencies noted in the February 16 FCR. That FCR analyzed the claims in Van Horne's original Complaint and found that they can be distilled to a core claim that Van Horne is not subject to the laws of the State of Texas (or any government) because, due to his religious beliefs, he is subject only to the laws of his Creator. Dkt. No. 11 at 8–11. Thus, Van Horne argues that he is free to operate a motor vehicle on public roads without being required to possess a driver's license. *Id*.

If the Court, in the exercise of its discretion, were to liberally construe the procedural rules in Van Horne's favor such that his Second Amended Complaint were properly before the Court, a consideration of its merits reveals nothing more than a slightly reworded

version of the same core claims that were previously dismissed in Van Horne's original Complaint. For example, through his original Complaint, Van Horne asserts violations of his First Amendment right to the free exercise of his religion, his Fourth Amendment right against unlawful search and seizure, his Thirteenth Amendment right against enslavement, and his Fourteenth Amendment right against deprivation of liberty without due process of law. *Id.* at 8. Each of these claims was considered in the February 16 FCR and found to be either legally frivolous or otherwise insufficient to state a claim upon which relief may be granted. *Id.* at 10–12. The Court adopted those findings and dismissed the claims. Dkt. No. 17.

In the Second Amended Complaint, Van Horne similarly claims that he belongs to a "self-governing religious society" and its members do not receive "privileges, benefits, or any assistance" from any government. Dkt. No. 15 at 2. Van Horne claims that he is "a member of a religious body" which is "not sponsored by or subject to the state." *Id*. at 6. And, Van Horne reiterates, "since there is no way to be subject to two different laws at the same time," he has "chosen to be subject only to his covenant/contract with is Creator. . . ." *Id*.

Van Horne argues yet again in his Second Amended Complaint that he derives his "right to liberty," and his right to operate a motor vehicle in Texas, from his Creator, and thus he is "unfetter[ed]" from any "legal duty imposed on [him] by secular governments and their statutory laws. . . ." *Id*. at 7, 9, 10. This would include any legal duty imposed on him by the State to secure a driver's license or other form of identification. *Id*. at 7. To

14

require Van Horne to apply for and obtain a driver's license "would indicate that [Van Horne] was asking permission from the very state entity he is commanded by his Creator to be separated from." *Id.* at 9. "[T]his would effectively make [Van Horne's] operation of his private automobile a state sponsored activity." *Id.*

Relatedly, Van Horne argues in the Second Amended Complaint that the "[r]ight to use the public roads in the ordinary course of life and business" is a constitutionally protected activity that the state is powerless to regulate through the issuance of license or otherwise. *Id.* at 10. As a result, Van Horne does not consider himself to be under the jurisdiction of any government. *Id.*

The substantive differences between Van Horne's original Complaint and his purported Second Amended Complaint are negligible, if any. *See* Dkt. Nos. 1, 15. Applying Van Horne's religious principles from his Second Amended Complaint to this case would mean that Van Horne would not be required to apply for or obtain a license from the State to exercise the privilege of driving in the State. *Id.* at 3. This is the same core claim that Van Horne urges in his original Complaint. *See* Dkt. No. 1 And while Van Horne attempts again through his Second Amended Complaint to couch his claims as legal causes of action, the ultimate argument is the same.[6] And because the Court has previously addressed and

---

[6] Based on his religious beliefs as summarized above, Van Horne asserts in the Second Amended Complaint causes of action arising out of the traffic stop for unreasonable search and seizure related to the traffic stop (Dkt. No. 15-1 at 9), Fourth Amendment retaliation (*Id.* at 10), due process violations (*Id.* at 11), false imprisonment (*Id.* at 11), failure to secure the personal liberty of Plaintiff (*Id.* at 12), failure to secure Plaintiff's right to pursue happiness (*Id.* at 13), failure to secure plaintiff's First Amendment right (*Id.*), failure to secure Plaintiff's right to privacy (*Id.* at 13–14), Fourth Amendment seizure of human being – kidnapping (*Id.* at 14–15), Fourth Amendment seizure of personal property – theft (*Id.* at 15), Thirteenth Amendment forced slavery (*Id.* at 15–16), conspiracy to deprive constitutionally protected right (*Id.* at 15).

15

dismissed Van Horne's claims based on those arguments, it should not allow Van Horne to amend his Complaint to bring them again.

As explained above, Rule 15(a)(2) instructs that "[t]he court should freely give leave *when justice so requires*." FED. R. CIV. P. 15(a)(2). (emphasis added). Here, Van Horne has had numerous opportunities to amend his claims to avoid their dismissal, including (1) through his response to White, Valencia, and Wheeler's Motion to Dismiss, (2) through his opportunity to cure pleading deficiencies noted in the February 16 FCR and to object to the FCR, (3) through his Second Motion for Leave to Amend, (4) through his Second Amended Complaint filed without leave, and (5) through his Motion to Amend Order and Judgment, discussed below. At every turn, Van Horne simply reiterates the same arguments that are predicated on his belief that he is not subject to the laws of any government including, specifically, the State laws applicable to the traffic stop on March 16, 2021. As explained in the February 16 FCR, there is no legal basis for that predicate and, under these circumstances, justice does not require any further opportunities for Van Horne to amend his claims.

Ultimately, when considered together, Van Horne's repeated failures to cure deficiencies in his pleadings and the futility of permitting additional amendments weigh in favor of denying any further amendments.

For these reasons, the undersigned RECOMMENDS that the Court deny Van Horne's Second Motion for Leave to Amend Complaint (Dkt. No. 13).

B.  Motion for Extension of Time (Dkt. No. 14)

Next, Van Horne moves under Rule 6(b) and Rule 15(a)(3) for an extension of time in which "to file [an] amendment" or "to file an answer or otherwise plead up to and including 05th day of April 2022." Dkt. No. 14 at 1. In support of this Motion, Van Horne states that he received the Court's Order denying Plaintiff's Motion for Leave to Amend and Motion to Issue Summons (Dkt. No. 10), as well as the February 16 FCR. *Id.* Van Horne states that the Motion for Extension "is based upon current workload and the need for time to research and prepare a response beyond his objection, motion to amend, and motion to extend deadline." *Id.*

At the time of the Motion's filing, the only pending deadline was Van Horne's 14-day deadline to file written objections to the February 16 FCR and opportunity to cure the deficiencies noted therein. *See* Dkt. No. 11 at 16. And Van Horne filed his objections to the FCR in time to be considered by District Judge Hendrix. Thus, it appears that Van Horne's Motion for Extension is now moot and should be denied on that basis.

C.  Motion for Clerk to Issue Summons and Request for U.S. Marshals to Serve Summons on Second Amended Complaint (Dkt. No. 16)

Next, through a letter to the District Clerk, docketed as a Motion, Van Horne requests that the Clerk, "Please serve, by US Marshal, one copy of the second amended above referenced complaint to each of the following: Texas DPS C/O Steven McGraw at 5805 North Lamar Blvd, Austin, Texas 78752." Dkt. No. 16 at 1.

As explained above, the Court previously dismissed all Van Horne's claims against the DPS that were alleged in his original Complaint. Dkt. No. 17. This Motion seeks the

17

issuance of summons and its service in connection with Van Horne's Second Amended Complaint, which as explained above is not properly before this Court and, as also explained above, attempts to bring non-viable claims that have already been considered by the Court and dismissed.

For these reasons, the undersigned RECOMMENDS that Van Horne's Motion for Clerk to Issue Summons and Request for U.S. Marshals to Serve Summons on Second Amended Complaint be denied.

D.  Motion to Amend Order and Judgment (Dkt. No. 18)

Lastly, Van Horne asks the Court "to amend its Order and Judgment dismissing as moot the claims against Defendants and to consider and or re-open the case for the purpose of adjudicating his claim for damages resulting from constitutional deprivation as argued in Plaintiff's Amended Complaint."[7] Although Van Horne brings this Motion under both Rule 52(b) and Rule 60, the undersigned construes the Motion under Rule 60 because no judgment has been entered.

Rule 60(b)(1)-(5) provides that on motion and just terms, a court may relieve a party from a "final judgment, order, or proceeding" because of a mistake, inadvertence, surprise, excusable neglect, newly discovered evidence, fraud, or a void or discharged judgment. FED. R. CIV. P. 60(b)(1)-(5). Rule 60(b)(6) permits relief from a "final judgment, order, or proceeding" for "any other reason that justifies relief." FED. R. CIV. P. 60(b)(6).

---

[7] The undersigned notes that no judgment was entered following the dismissal of Van Horne's claims through the Order Accepting Findings, Conclusions, and Recommendation of the United States Magistrate Judge. *See* Dkt. No. 17.

In support of his Motion, Van Horne complains that in accepting the undersigned's February 16 FCR, the Court "ruled on Plaintiff's original complaint," but "Plaintiff filed an amended complaint of which was hardly address nor ruled upon." Dkt. No. 18 at 1. This is an apparent reference to the Second Amended Complaint for which Van Horne failed to obtain leave to file, as discussed more fully above. Specifically, Van Horne complains through his Motion to Amend Order and Judgment that the Court "did not address the issue of damages sought by Plaintiff against Defendants in the Amended Complaint." *Id.* Thus, Van Horne seeks to modify the Order Accepting FCR for the sole purpose of awarding him damages. *Id* at 1–2.

Insofar as Van Horne is claiming that the Court's failure to consider his Second Amended Complaint was a "mistake" under Rule 60(b)(1), Van Horne never received leave of Court to file the Second Amended Complaint and, for reasons explained above, his Motion seeking such leave should be denied. Thus, the operative complaint at the time of the Court's Order Accepting FCR was Van Horne's removed state court Complaint.

To the extent that Van Horne complains that the Court "did not address the issue of damages sought by Plaintiff against Defendants in the Amended Complaint," ignoring for the moment that the Court never reached the issue of damages in connection with the dismissed claims, the undersigned notes that the damages sought in the two complaints is

19

essentially the same.[8] Otherwise, Van Horne fails to identify a basis in Rule 60(b)(1)-(5) for which the Court may relieve him from the consequences of the Order Accepting FCR.

Turning then to a construction of Van Horne's Motion under Rule 60(b)(6)'s "any other reason that justifies relief" clause, that provision "is a residual clause used to cover unforeseen contingencies; that is, it is a means for accomplishing justice in exceptional circumstances." *Steverson v. GlobalSantaFe Corp.*, 508 F.3d 300, 303 (5th Cir. 2007) (quotation marks and citation omitted). A district court retains "especially broad" discretion when considering a Rule 60(b)(6) motion. *Harrell v. DCS Equip Leasing Corp.*, 951 F.2d 1453, 1458 (5th Cir. 1992). "It is not enough that the granting of relief might have been permissible, or even warranted[—]denial must have been so *unwarranted* as to constitute an abuse of discretion." *Seven Elves Inc. v. Eskenazi*, 635 F.2d 396, 402 (5th Cir. 1981). A Rule 60(b)(6) motion will be granted only in extraordinary circumstances, and the burden is on the movant to show that such circumstances warrant Rule 60(b)(6) relief. *See Diaz v. Stephens*, 731 F.3d 370, 374 (5th Cir. 2013). "Rule 60(b)(6) requires a showing of manifest injustice and will not be used to relieve a party from the free, calculated, and deliberate choices he has made." *Yesh Music v. Lakewood Church*, 727 F.3d 356, 363 (5th

---

[8] Compare Dkt No. 1-4 at 25–26 and Dkt. No. 15-2 at 6. One notable difference between Van Horne's original Complaint and his purported Second Amended Complaint is in his Prayer for damages. The original Complaint seeks, among other damages, an order from this Court requiring the State "to issue a state recognized document for Plaintiff . . . which may be presented to its law enforcement officers to prevent these violations from persisting." Dkt. No. 1-4 at 25. Possibly noting the similarity between the requested state-issued document and the State-issued driver's license Van Horne finds repugnant to his religious principles, Van Horne no longer seeks such a document. *See* Dkt. No. 15-2 at 5–6.

Cir. 2013) (internal quotations omitted). Nor should Rule 60(b)(6) "be used to undo the damage done by a poor strategic decision." *Id*.

Here, Van Horne fails to demonstrate the existence of extraordinary circumstances that warrants Rule 60(b)(6) relief. Indeed, his Motion to Amend Order and Judgment is nothing more than an attempt to have the Court once again consider his legally frivolous claims that the State's laws do not apply to him.[9]

### III.  CONCLUSION

For the reasons explained above, the undersigned RECOMMENDS that:

1.  Van Horne's Second Motion for Leave to Amend Complaint (Dkt. No. 13) be DENIED;

2.  Van Horne's Motion for Extension of Time (Dkt. No. 14) be DENIED;

3.  Van Horne's Motion for Clerk to Issue Summons and Request for U.S. Marshals to Serve Summons on Second Amended Complaint (Dkt. No. 16) be DENIED; and

---

[9] The undersigned notes that Van Horne was a defendant in another civil action in this Court that resulted in a jury verdict against him and others on a Fair Labor Standards Act claim brought by a former employer. *See* Civil Action No. 1:16-CV-00111-C, *Biziko v. Van Horne, et al*. Following an unsuccessful appeal, Van Horne and his wife filed multiple documents in that action addressed to the United States Court of Appeals for the Fifth Circuit and this Court. Through these documents, the Van Hornes provided notice to the Courts that the Courts are "foreign Courts," that the Van Hornes had "mistakenly become temporary wards of the United States Federal Government Court" by allowing the Courts to exercise jurisdiction over them, that they are "no longer wards" and thus not subject to the Courts' jurisdiction, and that the Courts have no authority to hold proceedings involving them. *See* Civil Action No. 1:16-CV-00111-C, Dkt. Nos. 145, 150-51, 153. After the Court in that case denied the Van Hornes' motion to be removed from the proceedings on these bases, the Van Hornes purported to "hereby remove themselves from any and all proceedings" and "hereby refuse for cause any opinions, recommendations, judgements [sic], or orders" of the Court. They further demanded that the Court "permanently cease and desist all proceedings involving" them and "dissolve any and all opinions, recommendations, judgements [sic], and orders" of the Court. *Id*. With one of these filings, the Van Hornes returned the Court's Order and Judgment and the Fifth Circuit's opinion, after marking each in red with the words, "Refused for Cause Without Prejudice Without Dishonor Without Recourse." Dkt. No. 145-1.

4.  Van Horne's Motion to Amend Order and Judgment (Dkt. No. 18) be DENIED.

If the Court accepts these recommendations, the undersigned further RECOMMENDS that the Court enter final judgment on all claims.

## IV.  RIGHT TO OBJECT

A copy of these Findings, Conclusions, and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2017); FED. R. CIV. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

ORDERED this 3rd day of October, 2022.

_____
JOHN R. PARKER
UNITED STATES MAGISTRATE JUDGE